# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

RYAN J. DIETERLE,

        Petitioner,     :    Case No. 1:22-cv-648

  - vs -         District Judge Jeffery P. Hopkins
                    Magistrate Judge Michael R. Merz

WARDEN, Marion Correctional
  Institution,

                       :
        Respondent.

## REPORT AND RECOMMENDATIONS

This habeas corpus case, brought by Petitioner Ryan Dieterle with the assistance of counsel, is before the Court on Respondent's Amended Motion to Dismiss (ECF No. 25) which Petitioner opposes ("Response," ECF No. 26). The Magistrate Judge reference in the case has recently been transferred to the undersigned to help balance the Magistrate Judge workload in this District. Ultimate decision of the case remains with District Judge Hopkins[1].

**Litigation History**

On June 28, 2006, Michelle Dieterle, Petitioner's estranged wife, was murdered in her apartment (Indictment, State Court Record, ECF No. 9, Ex. 1). On August 2, 2006, the Hamilton

---

[1] The case was originally assigned to District Judge Cole, but transferred to Judge Hopkins to create a docket for Judge Hopkins upon his accession to the District Court bench (ECF No. 4).

County Grand Jury returned a seven-count indictment charging Petitioner with one count of violation of a protection order/anti-stalking protection order as prohibited by Ohio Revised Code § 2919.27(A); one count of aggravated burglary of Michelle's apartment in violation of Ohio Revised Code § 2911.11(A)(1); two counts of rape of Michelle in violation of Ohio Revised Code § 2907.02(A)(2); and three counts of aggravated murder with three death specifications in violation of Ohio Revised Code § 2903.01(B)(7). *Id.*

After one count of rape and one count of aggravated murder were dismissed, the jury convicted Dieterle of the remaining charges and he was sentenced to life in prison without the possibility of parole, consecutive to twenty-five years on the other charges[2]. *Id.* at Ex. 6.

The Ohio First District Court of Appeals affirmed the convictions and sentence. *State v. Dieterle,* 2009-Ohio-1888 (Ohio App. 1st Dist. Apr. 17, 2009). On August 26, 2009, the Supreme Court of Ohio declined to exercise jurisdiction over an appeal. *State v. Dieterle,* 122 Ohio St.3d 1506.

On August 5, 2008, while the direct appeal was pending, Dieterle, represented by counsel, filed a petition for post-conviction relief under Ohio Revised Code § 29453.21 (Petition, State Court Record, ECF No. 9, Ex. 22). However Dieterle withdrew the Petition without prejudice the next month, presumably because the expert report from crime scene reconstructionist Turvey had not been received. *Id.* at Ex. 25.

Nine years later on August 4, 2017, Dieterle filed a *pro se* Motion to Arrest Judgment, asserting the Hamilton County Common Pleas Court had no subject matter jurisdiction over his case for lack of a bindover order from a municipal or county court. *Id.* at Ex. 26. The Motion was denied with a form entry and Dieterle took no appeal. *Id.* at Ex. 28.

---

[2] The death specifications had been dismissed earlier and were not tried to the jury.

2

Dieterle filed his Petition for Writ of Habeas Corpus in this Court on November 9, 2022 (ECF No. 1)[3]. On November 15, 2022, Magistrate Judge Elizabeth A. Preston Deavers, to whom this case was initially and randomly referred under this Court's General Order 22-05, ordered the Respondent to file an answer "conforming to the requirements of Rule 5 of the Rules Governing § 2254 Proceedings" within sixty days (ECF No. 3). On January 30, 2023, Attorney Wendy Callaway entered her appearance as counsel for Petitioner (ECF No. 8). Instead of an answer, Respondent filed a motion to dismiss the Petition as time-barred (ECF No. 10). After some procedural missteps, Dieterle was permitted to file the Amended Petition which is now the operative pleading (ECF No. 24). Respondent filed the Amended Motion to Dismiss which is now ripe for decision.

## Analysis

A motion to dismiss involuntarily is a dispositive motion on which an assigned Magistrate Judge is required to file a report and recommended decision. 28 U.S.C. § 636(b)(1)(B).

Respondent asserts the Petition is time-barred under the statute of limitations enacted by the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA") which is codified at 28 U.S.C. § 2244(d). That statute provides: provides:

> (1) A 1-year period of limitation shall apply to an application for a
>     writ of habeas corpus by a person in custody pursuant to the

---

[3] The Clerk date stamped the Petition November 9, 2022 (PageID 1). Dieterle claims to have signed it November 21, 2022, and to have placed it in the prison mailing system November 23, 2022. The discrepancy is unexplained and appears to be immaterial.

3

> judgment of a State court. The limitation period shall run from the latest of —
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Respondent calculates that Dieterle's conviction became final on direct review ninety days after the Ohio Supreme Court declined jurisdiction on August 26, 2009, because that was the deadline for Dieterle to seek review in the Supreme Court of the United States. That date was November 24, 2009. Because Dieterle did not seek certiorari, the statute began to run on November 25, 2009, and expired one year later.

Dieterle does not contest Respondent's calculation of the date of finality, but claims he is entitled to equitable tolling of the time between November 25, 2009, and November 9, 2022, when the Petition was filed, a period of almost thirteen years.

The one-year statute of limitations in 28 U.S.C. § 2244 is subject to equitable tolling.

4

*Holland v. Florida*, 560 U.S. 631, 645 (2010). However, a petitioner is "'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Menominee Indian Tribe of Wisconsin v. United States*, 136 S. Ct. 750, 193 L. Ed. 2d 652(2016); *Ata v. Scutt*, 662 F.3d 736 (6th Cir. 2011), *quoting Holland*, 130 S. Ct. at 2562, *quoting Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). "[T]he second prong of the equitable tolling test is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond its control." *Menominee Indian Tribe*, 136 S. Ct. at 756, citing *Holland* (emphasis sic).

In both *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), and *Lawrence v. Florida*, 549 U.S.327 (2007), the Supreme Court assumed without deciding that equitable tolling was available for habeas petitions. As a general proposition, limitations periods, even as against the United States, are subject to equitable tolling, whereas time bars which limit the jurisdiction of courts are not. *Irwin v. Veterans Administration,* 498 U.S. 89 (1991). The language and legislative history of the AEDPA establish that § 2244(d) was intended as a limitations period, not a jurisdictional bar, and is therefore subject to equitable tolling. *McClendon v. Sherman,* 329 F.3d 490 (6th Cir. 2003); *Dunlap v. United States*, 250 F.3d 1001 (6th Cir. 2001).

"Equitable tolling allows courts to review time-barred habeas petitions 'provided that a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'" *Keeling v. Warden*, 673 F.3d 452, 462 (6th Cir. 2012), quoting *Robertson v. Simpson,* 624 F.3d 781, 783 (6th Cir. 2010). *Keeling* cites several prior cases where equitable tolling was refused even though a petitioner's attorney failed to keep him apprised of the status of pending matters. A petitioner's *pro se* status and lack of knowledge of the law do not constitute an extraordinary circumstance to excuse late filing. *Keeling*.

5

Dieterle concedes that the burden of persuasion of entitlement to equitable tolling is on him, but asserts he does not need to carry that burden "in order to merit further record development." (Response, ECF No. 26, PageID 504, citing *Jurado v. Burt,* 337 F.3d. 638 (6th Cir. 2003); and *Laws v. Lamarque,* 351 F.3d. 919, 924 (9th Cir. 2003)). *Jurado* does not support that proposition and in fact says nothing about when a habeas petitioner must produce evidence supporting equitable tolling.[4]

The Ninth Circuit in *Laws* did not address the general question of when a habeas petitioner must produce evidence that would justify equitable tolling. Rather it remanded the case for an evidentiary hearing on whether petitioner's mental illness, documented in the trial record, persisted to the extent that it prevented him from a timely filing. Dieterle cites no decision of a court in the Sixth Circuit which treated *Laws* as persuasive authority for the proposition that merely pleading equitable tolling should suffice for further record development.

*Laws* is not persuasive to this Court. Dieterle does not claim equitable tolling on the basis of mental incapacity and the evidence of what he did that arguably entitles him to equitable tolling is largely in his hands. Adjudicating a dispositive affirmative defense at the outset of a case is obviously more consistent with judicial economy than allowing full "record development"[5] before adjudication. In sum, merely asserting an entitlement to equitable tolling is insufficient to delay adjudication of the question.

---

[4] The *Jurado* court denied equitable tolling despite the petitioner's retention of counsel who provided an affidavit of her diligent efforts to litigate the case.

[5] On the Court's order, Respondent has already filed the state court record. Further additions to the factual record are severely limited by precedent. *Cullen v. Pinholster,* 563 U.S. 170 (2011); *Shinn v. Ramirez*, 142 S.Ct. 2037 (2022).

Dieterle attempts to meet his burden of persuasion on equitable tolling by relying on two Affidavits, his own and that of his father.

Respondent asserts "Consideration of these self-serving affidavits that were never presented to the state court is not permitted under *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011) and *Shinn v. Ramirez*, 142 S. Ct. 1719 (2022)." In *Pinholster,* the Court held that under 28 U.S.C. §§ 2254(d)(1), when addressing a claim that was adjudicated on the merits by the state court, the habeas court's review is limited to the record that was before the state court. *Ballinger v. Prelesnik*, 709 F.3d 558, 561 (6th Cir. 2013); *Bray v. Andrews,* 640 F.3d 731, 737 (6th Cir. 2011). In *Shinn* the Court held "when a federal habeas court . . . reviews any evidence for any purpose, it may not consider that evidence on the merits of a negligent prisoner's defaulted claim unless the exceptions in § 2254(e)(2) are satisfied.

But Dieterle does not tender these affidavits on the merits of any of his claims, but on the affirmative defense of the statute of limitations. In *Sapp v. Jenkins*, 2023 U.S. Dist. LEXIS 1793533 (S.D. Ohio Feb. 7, 2023)(Jolson, M.J.), affirmed, *Sapp v. Jenkins,* 2023 WL 3475412, the Court held that *Shinn v. Ramirez*, ––– U.S. –––, 142 S. Ct. 1718, 212 L.Ed.2d 713 (2022), and *Shoop v. Twyford*, ––– U.S. –––, 142 S. Ct. 2037, 213 L.Ed.2d 318 (2022), do not prohibit discovery and presentation of its results when the issue is not the merits of a claim, but a preliminary issue such as statute of limitations.

The undersigned agrees with Judge Jolson's decision in *Sapp*: the language of *Pinholster* and *Shinn* do not preclude consideration in habeas of evidence on non-merits issues. Logically, it could hardly be otherwise. The question of whether a habeas petition is barred by the statute of limitations is a question of federal law to be decided by the habeas court. Whether a petitioner's delay in filing is to be excused by equitable tolling is somewhat dependent on what has happened

7

in the state courts, but largely on what has happened outside the record in those courts. *Pinholster* and *Shinn* do not preclude consideration of the Affidavits.

Petitioner's Affidavit appears at ECF No. 20-1. In relevant part he avers that

> Michelle Berry was hired by my parents David and Deborah Dieterle in 2008 to represent me. Mrs. Berry visited me in Warren Correctional Institution in 2008 to discuss my direct appeal. In 2008, Mrs. Berry mailed me a copy of my direct appeal she had filed. That is the last contact I had with Mrs. Berry. In late 2011 or early 2012, I was wondering why I hadn't heard anything about my direct appeal. The librarian at Toledo Correctional Institution showed me how to use the Lexis Nexis computer. I found out that my direct appeal had been decided in 2009. I called my parents and they contacted Mrs. Berry. Mrs. Berry told them "yes" the direct appeal had been decided and she was sorry she didn't contact us. My mother asked what was next and Mrs. Berry told her nothing, we had missed the time requirements for anything further. I talked to our prison law aides and they confirmed I was indeed time barred. In 2018 I started to learn law and work my case when the COVID 19 pandemic hit. By 2022 I had filed my Habeas Corpus in Federal Court, after I learned my state appeal had already been filed to the Ohio Supreme Court and they refused to hear it.

*Id.* at PageID 459[6].

Petitioner's father's Affidavit appears at ECF No. 20-2. In relevant part he avers that:

> We hired Attorney Michelle Berry in 2009 to handle the direct appeal. My wife and I went to court to observe the oral argument before the court of appeals. My wife and I and our son Ryan did our best to stay involved in the appellate process. Michelle Berry told us it would take quite a long time to hear the results and she would let us know. After several years, we contacted her and she said that it was denied. I asked her what the next step was and she explained that there was nothing more to be done. I told her I didn't think that was right that she did not contact us and let us know. We hired her and expected the professionalism of letting us know the end result of the case.

---

[6] When asked by the standard form for habeas petitions why his petition was timely, he wrote: "As explained under ground One and furthered here. Petitioner did not file because at the time it would have been futile, since his claim(s) involved unsettled state and Federal laws, which also included several decisions made by the United States Supreme Court. *Oregon v. Ice* (2009). PageID 8. Although difficult to discern what Petitioner means, he mentions none of the facts he relies on in his Affidavit.

*Id.* at PageID 461. Both Affidavits were prepared and filed in February 2023.

The State Court Record shows that Dieterle was represented by R Scott Croswell III AND Elizabeth E. Agar at sentencing on October 12, 2007 (*Id.* at Ex. 6). A Notice of Appeal to the First District was filed by Attorney Bruce K. Hust on November 8, 2007. *Id.* at Ex. 7. The Affidavits do not say when she was retained, but ten months later on September 19, 2008, Attorney Michele Berry filed a Brief on Dieterle's behalf. *Id.* at Ex. 8. The First District entered its decision affirming the convictions on April 17, 2009. *Id.* at Ex. 15. Attorney Berry filed a timely Notice of Appeal to the Ohio Supreme Court June 1, 2009. *Id.* at Ex. 18. That court declined to exercise appellate jurisdiction on August 26, 2009. *Id.* at Ex. 21.

There are of course, evidentiary problems with relying on the Affidavits. They are in themselves uncross-examined hearsay and they repeat Attorney Berry's answers to their questions, making them double hearsay at that point. They offer no corroboration, e.g., a copy of an engagement letter with Attorney Berry. For the sake of argument, however, the Court is willing to accept the content of the Affidavits as stating the truth. When that is done, they are very far from justifying the equitable tolling sought here.

Dieterle admits that he knew as of late 2011 or early 2012 that his appeal had been denied in 2009. Yet he did not file his Petition in this case until more than ten years later. He does not tell the Court what he did by way of due diligence in pursing his rights in the meantime. He asserts he began "to learn law and work my case when the COVID 19 pandemic hit." The pandemic lockdown did not occur until March 2020.

Assuming that Attorney Berry did not advise Dieterle that the Ohio Supreme Court had declined jurisdiction and he did not learn of that fact until early 2012, he could be entitled to equitable tolling for that period. If we take March 31, 2012, as the latest date on which the statute

9

would have been equitably tolled, it would then have expired April 1, 2013.  No facts submitted by Dieterle justify tolling beyond that date.  The Sith Circuit has held "Absent compelling equitable considerations, a court should not extend limitations by even a single day." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000), quoting *Johnson v. United States Postal Service*, 863 F.2d 48 (Table), 1988 WL 122962, at *3 (6th Cir. Nov.16, 1988).

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends that the Petition be dismissed as time-barred.  Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

October 2, 2023.

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. #

s/ *Michael R. Merz*
United States Magistrate Judge